910 F.2d 594
 59 USLW 2112, 12 Employee Benefits Ca 2267
 Suzanne JOHNSON; Janet Young, individually and on behalf of
all similarly situated employees, Plaintiffs-Appellants,
v.
ST. FRANCES XAVIER CABRINI HOSPITAL OF SEATTLE; St. Frances
Xavier Cabrini Employees Pension Plan; and Walter E.
Abegglen and Sister Tommasina Lanski, M.S.C., Trustees of
the Plan, Defendants-Appellees.
 No. 89-35392.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1990.
Decided Aug. 6, 1990.
 
 Richard H. Robblee, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiffs-appellants.
 William W. Treverton, Conner, Gravrock and Treverton, Bellevue, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before FARRIS, PREGERSON and FERGUSON, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 I.
 
 1
 Petitioners are a group of nurses, members of the Washington State Nurses Association, filing as a class of individual participants in the Cabrini Hospital pension plan. The nurses have sued their employer (the Cabrini Hospital), their pension plan, and the plan's Trustees under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1461.
 
 
 2
 Since 1979, the employer has provided the nurses with a defined contribution pension plan. Although the effective date is in dispute, by 1987 the employer unilaterally reduced its contributions to the plan by about forty percent. The nurses allege that the reduction violates various sections of ERISA, including 29 U.S.C. Sec. 1104 (fiduciary responsibility) and Secs. 1054(h) and 1054(g) (statutory notice).
 
 
 3
 A collective bargaining agreement exists between the nurses union and the employer. The agreement provides for arbitration of contract disputes. Reference is made in the agreement to the employer's obligation to provide a pension plan, but the terms of the plan are not covered in the agreement. In opposing the reduction of pension contributions, the nurses both pursued arbitration through their union asserting a violation of the collective bargaining agreement; and filed this class action suit under ERISA.
 
 
 4
 At arbitration, the arbitrator found for the Hospital, ruling that the pension plan contribution reduction did not violate the collective bargaining agreement. In this suit, the employer and the nurses filed cross motions for summary judgment. The district court granted summary judgment for the employer, accepting the employer's assertion that the suit was essentially settled by the arbitrator's findings. The nurses now appeal, asking that summary judgment be entered for them, and that they be awarded attorney's fees. We find summary judgment inappropriate for either party, and remand to the district court for further proceedings.
 
 II.
 
 5
 A grant of summary judgment is reviewed de novo. Gibson v. Prudential Insurance Co., 915 F.2d 414, 416 (9th Cir.1990). The court must decide if there is "no genuine issue as to any material fact," United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1540 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989), and whether the substantive law is applied correctly. Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984).
 
 III.
 
 6
 The nurses allege that the pension plan trustees breached their fiduciary duty to the plan under 29 U.S.C. Sec. 1104 by agreeing to the reduced contributions. The district court held that this claim was barred as res judicata, since the alteration to the pension plan was a contractual matter which had already been argued before the arbitrator.
 
 
 7
 Only one clause of the collective bargaining agreement refers to the pension plan. Section 12.4 of the agreement reads,
 
 
 8
 Retirement Plan. The Employer will provide a retirement plan for regular status nurses. Retirement benefits and eligibility requirements for participation shall be defined by the Employer's plan.
 
 
 9
 At arbitration, the union contended that this provision incorporated the terms of the pension plan as part of the collective bargaining agreement, and that the substantive provisions of the plan were therefore contractually binding. The union argued that section 15.01 of the pension plan thus prevented a reduction of contributions under the contract. Section 15.01 reads:
 
 
 10
 The Plan and Trust may be amended at any time by action of the Board. No amendment can be made that would reduce or withhold any right or benefits of the then existing Plan Participants, unless such amendment is required in order to obtain qualification of the Plan under the Internal Revenue Code.
 
 
 11
 The union's position was rejected by the arbitrator. The arbitrator held that under section 12.4 of the collective bargaining agreement, the terms and administration of the plan were not subject to negotiation; and that the union had yielded its right to collectively bargain over the terms of the plan. The arbitrator went on to say that in any event, according to his interpretation of section 15.01 of the pension plan and other documents "not incorporated into the [collective bargaining] Agreement," the plan did not bar reduction in contributions. It was this interpretation of section 15.01 of the pension plan which the district court held was res judicata of the nurses' ERISA claim.
 
 
 12
 However, according to the arbitrator's own interpretation of the contract, the terms of the pension plan were not incorporated into the collective bargaining agreement. Since the terms of the plan were external to the agreement, any substantive interpretation of those terms is therefore beyond the scope of the arbitrator's authority, which is limited to interpretation of the Agreement. As such, the arbitrator's view of the pension plan is dicta, and cannot be res judicata of subsequent claims. See Eichmann v. Fotomat Corp., 759 F.2d 1434, 1440 (Kennedy, C.J., concurring) (9th Cir.1985).
 
 
 13
 Further, the claim of breach of fiduciary responsibility under ERISA is a different claim than that presented to the arbitrator. The arbitrator was not engaged in a general examination of the terms and history of the pension plan, nor of the fiduciary duties of those administering the plan. The arbitrator looked narrowly to one section of the plan only to evaluate if it supported a contractual claim under the collective bargaining agreement. Since this claim is distinct from that which the arbitrator considered when he reviewed a term of the pension plan, res judicata does not apply. Amaro, 724 F.2d at 749.
 
 
 14
 Nor does this Circuit generally consider it within an arbitrator's competence to decide ERISA claims. Id. at 750. "Arbitrators, many of whom are not lawyers ... lack the competence of courts to interpret and apply statutes as Congress intended." Id. It is true that some pension claims may be covered by collective bargaining agreements, and that an arbitrator's decision may be binding on such claims. Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 939 (3rd Cir.1985). However, in determining whether a dispute arguably covered by both ERISA statute and a collective bargaining agreement is arbitrable, the key question is whether the answer settling the dispute "is to be found in the collective bargaining agreement or in ERISA's provisions." Viggiano v. Shenango China Div., 750 F.2d 276, 279 (3rd Cir.1984). In the instant case, the arbitrator decided that the terms of the pension plan were independent of the collective bargaining agreement:
 
 
 15
 In the Arbitrator's view, all the Employer was required to do, in accordance with Section 12.4 [of the collective bargaining agreement] was to "provide" a Retirement Plan for the benefit of regular status registered nurses. The evidence established that the initial level of contribution was never the subject of negotiation between the two parties. The level of contribution was independently established by the Hospital without consultation with the Association. Thus, it was a retirement plan provided by the Hospital for the benefit of its employees.
 
 
 16
 The arbitrator's contractual analysis makes clear that the terms of the pension plan were not a part of the collective bargaining agreement. The nurses and the employer neither agreed to negotiate nor arbitrate the terms of the plan. See Sulit v. Dean Witter, 847 F.2d 475, 477-479 (8th Cir.1988) (arbitrarily of ERISA claims depends in part on parties' agreement to arbitrate). The answer to the pension claim is thus found within the statutory provisions of ERISA as applied to the independent pension plan, rather than in the collective bargaining agreement. The interpretation of the pension plan is therefore properly left to a federal court. Cf. Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981) (in Fair Labor Standards Act context, finding the "rights petitioners assert in this action are independent of the collective bargaining process."); McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (similar access to federal court in Sec. 1983 action).
 
 
 17
 We therefore remand to the district court to determine whether the reduction in pension contributions satisfied ERISA standards of fiduciary responsibility under 29 U.S.C. Sec. 1104. Necessary to such a determination is an independent evaluation of the meaning of section 15.01 of the pension plan. Section 15.01 states, "No amendment can be made that would reduce or withhold any right or benefits of the then existing Plan Participants...." This language, on its face, appears to distinguish current ("existing") plan participants, for whom no reduction in benefits is permitted, from future plan participants, who could receive lower benefit levels by way of plan amendments. However, the arbitrator read this language to mean that no "existing benefits" could be reduced by amendment, finding that "existing" should be read as "vested" or "accrued," distinguishing such accrued benefits from anticipated, or promised, benefits. The district court simply "adopted" the arbitrator's position. A fuller record on the history of this plan language and its relation to other sections of the pension plan is needed to resolve this issue, which is significant to the Trustees' responsibilities under the plan.
 
 IV.
 
 18
 The district court agreed with the nurses that 29 U.S.C. Sec. 1054(h) requires notice to individual plan participants of reductions in employer contributions, and that the employer failed to provide such notice. However, the district court held that the amendments to the plan were adopted in April, 1986, prior to the effective date of 29 U.S.C. Sec. 1054(h) (October 22, 1986), meaning that the ERISA provision did not apply. The district court based this holding on "the arbitrator's finding" which the court termed "binding on the parties."
 
 
 19
 The arbitrator's decision, however, did not address whether the reduction was "adopted" or "effective" for purposes of ERISA. The arbitrator's decision leaves an ambiguous impression as to when the change was effected. Although the Hospital Governing Board "adopted" at least the intention to reduce pension contributions in September 1985, the hospital entered into discussions about the changes with the union following that decision. As late as November, 1986, according to the arbitrator, the union had "the understanding that the Hospital would continue to make its contribution based on the old [non-reduced] formula until the dispute could be resolved." Only after November, 1986, does the arbitrator state that "[t]he Hospital proceeded to implement the Plan changes".
 
 
 20
 Further, the nurses cite testimony by the employer's attorney at arbitration which suggests that the change in contribution "adopted" in 1985 was only a "proposed amendment, a proposed change ... not fully effectuated until 1987," after discussions with the union reached impasse.
 
 
 21
 The District Court has not substantively addressed the conflicting allegations on the effective date of the reduction, instead summarily relying on an ambiguous chronology from the arbitrator. The effective date is an issue of material fact still to be resolved.
 
 V.
 
 22
 The nurses also alleged that the pension plan alteration violated 29 U.S.C. Sec. 1054(g), which proscribes reductions in accrued benefits except under certain conditions. Among those conditions is notice to the Secretary of Labor, who may not approve such reductions unless the Secretary determines that they are "necessary because of a substantial business hardship" as defined by the Act. 29 U.S.C. Sec. 1082(c)(8).
 
 
 23
 It is undisputed that there was no such notice of the plan change to the Secretary of Labor. However, the district court again "adopt[ed] the conclusion of the arbitrator" and asserted that no accrued benefits existed at the time of the amendment. But this conclusion is not clearly supported either by the district court's opinion nor by the arbitrator's decision.
 
 
 24
 While "allocations" are made to each participant's account monthly under Section 7.02 of the plan, the financial balance of the plan and of each individual's account is valuated annually according to Section 7.01. How the contributions have been made under past practice and when they become accrued benefits for ERISA purposes are undeveloped in the record. Additional findings by the trial court are necessary to resolve this disputed material issue.
 
 
 25
 The district court's order of summary judgment is REVERSED and this cause REMANDED for trial. The parties will bear their own costs and fees for this appeal.